STONEHILL COLLEGE *vs.* MASSACHUSETTS COMMISSION
AGAINST DISCRIMINATION & another.[1]
WILFERT BROTHERS REALTY CO. *vs.* MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION & another.[2]
KEYLAND CORPORATION & another[3] *vs.* MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION & another.[4]
MASSACHUSETTS BAY TRANSPORTATION AUTHORITY *vs.*
MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION
& another.[5]

Bristol. Middlesex. Dukes. Suffolk. February 3, 2004. - May 6, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Massachusetts Commission Against Discrimination. Anti-Discrimination Law*,
Employment, Race, Handicap, Sex, Termination of employment. *Employ-
ment*, Discrimination, Retaliation, Sexual harassment, Termination. *Civil
Rights*, Termination of employment. *Practice, Civil*, Jury trial. *Constitu-
tional Law*, Jury, Equal protection of laws, Retroactivity of judicial holding.
*Jury and Jurors. Common Law. Emotional Distress. Damages*, Emotional
distress.

This court affirmed the correctness of its holding in *Dalis* v. *Buyer Advertis-
ing, Inc.*, 418 Mass. 220 (1994), that art. 15 of the Massachusetts Declara-
tion of Rights entitles plaintiffs with sex discrimination in employment
claims filed in the Superior Court pursuant to G. L. c. 151B, § 9, to a trial
by jury. [559-561]
This court concluded that respondents who have been determined by the Mas-
sachusetts Commission Against Discrimination in an administrative
proceeding under G. L. c. 151B, § 5, to have committed discriminatory
acts in employment are entitled to administrative review, under G. L.
c. 30A, of that decision only, overruling in part the decision in *Lavelle* v.
*Massachusetts Commission Against Discrimination*, 426 Mass. 332 (1997),
that such respondents are entitled to a jury trial de novo on the discrimina-
tion claims asserted against them. [561-570] SOSMAN, J. concurring. COWIN,
J. dissenting.
This court declined to overrule case law allowing emotional distress damages
to be awarded in employment discrimination cases and other employment
cases before the Massachusetts Commission Against Discrimination
[570-575], but announced that a finding of discrimination or retaliation, by

[1]Soo Tang Tan.
[2]David Keeling.
[3]John Kheary.
[4]Brenda Raffurty.
[5]Geraldine Ross.

itself, would no longer be sufficient to permit an inference of, or a presumption of, emotional distress [575-577].

CIVIL ACTION commenced in the Superior Court Department on November 27, 2002.

A motion to dismiss was heard by *David A. McLaughlin*, J.

A proceeding for interlocutory review was heard in the Appeals Court by *Charlotte A. Perretta*, J. The Supreme Judicial Court granted an application for direct appellate review.

CIVIL ACTIONS commenced in the Superior Court Department on February 27, April 9, and June 25, 2002, respectively.

Questions of law were reported by *Peter W. Agnes, Jr., Charles T. Spurlock*, J., and *Margaret R. Hinkle*, J. The Supreme Judicial Court granted requests for direct review.

*M. Robert Dushman* for Stonehill College.

*Robert L. Quinan, Jr.*, Assistant Attorney General, & *Beverly I. Ward & Steven S. Locke* (*Wendy A. Cassidy, J. Lynn Milinazzo-Gaudet, & Simone R. Liebman* with them) for Massachusetts Commission Against Discrimination.

*Nancy S. Shilepsky* (*Patricia A. Washienko* with her) for Soo Tang Tan.

*Robert S. Mantell* for David Keeling & another.

*Albert F. Cullen, Jr.*, for Wilfert Brothers Realty Company.

*Amy L. Hanson* (*James F. Rogers, II*, with her) for Brenda Raffurty.

*Bernard J. Hamill* (*David A. Robinson* with him) for Keyland Corporation & another.

*Walter M. Foster* (*Sarah E. Lent* with him) for Massachusetts Bay Transportation Authority.

The following submitted briefs for amici curiae:

*Christine Hughes, Arthur G. Telegen, Anjali Parekh Prakash, Richard L. Alfred, Sally L. Adams, & James M. Paulson* for New England Legal Foundation & others.

*Joel P. Suttenberg* for Jewish Alliance for Law and Social Action.

*James S. Weliky, Laura M. Unflat, & Robert S. Mantell* for Massachusetts Employment Lawyers Association.

*Anne L. Josephson, Sarah Wunsch, Ellen J. Zucker, Nadine Cohen, & James S. Weliky* for American Civil Liberties Union of Massachusetts & others.

*Thomas F. Reilly*, Attorney General, & *John E. Bowman, Jr.*, Assistant Attorney General, for the Attorney General.

*David A. Robinson* for town of Agawam.

*Martin J. Rooney* for Acushnet Housing Authority & others.

GREANEY, J. These cases arise under G. L. c. 151B. In each case, the Massachusetts Commission Against Discrimination (MCAD or commission) entered decisions finding the respondents liable for employment discrimination and awarded relief including damages for emotional distress. The respondents have sought judicial review of the MCAD's decision pursuant to G. L. c. 151B, § 6, in accordance with standards set forth in G. L. c. 30A, § 14, and also have sought jury trials in the Superior Court, pursuant to this court's decision in *Lavelle* v. *Massachusetts Comm'n Against Discrimination*, 426 Mass. 332 (1997) (*Lavelle*). In three of the cases, a judge in the Superior Court reported a question or questions, seeking clarification of various procedural and evidentiary issues relating to the respondents' requests for jury trials. In the fourth case (Stonehill College *vs.* Massachusetts Commission Against Discrimination), the respondent appeals from an order by a judge in the Superior Court directing it to elect either judicial review under G. L. c. 30A of the MCAD decision or a jury trial pursuant to *Lavelle*, thus denying the respondent's right to have both. We granted applications for direct appellate review and invited interested parties to submit briefs concerning an issue not raised by the parties below, the correctness of this court's holding in *Dalis* v. *Buyer Advertising, Inc.*, 418 Mass. 220, 223 (1994) (*Dalis*), that art. 15 of the Declaration of Rights of the Massachusetts Constitution entitles plaintiffs with sex discrimination claims filed in the Superior Court pursuant to G. L. c. 151B, § 9, to a trial by jury. Necessarily contained in that request was a corollary issue calling for the parties and interested parties also to express views on the subsequent extension of the *Dalis* holding, in *Lavelle, supra*, to respondents in administrative proceedings before the MCAD pursuant to G. L. c. 151B, § 5 (§ 5 proceedings).

We conclude that *Dalis* was correctly decided. We further conclude that the *Dalis* decision does not require, as matter of State constitutional law, the result reached by this court in *Lavelle*. That result is problematic, and for reasons set forth in this opinion, we conclude that *Lavelle* must be overruled in part. Accordingly, as of the date of this opinion, respondents who have been determined by the commission in § 5 proceedings to have committed discriminatory acts in employment in violation of G. L. c. 151B are entitled to administrative review, under G. L. c. 30A, of that decision only. We also conclude that emotional distress damages should continue to be awarded by the MCAD in appropriate cases and comment on various factors that govern such awards.

## Stonehill College *vs.* Massachusetts Commission Against Discrimination.

On April 27, 1995, Soo Tang Tan, a professor of mathematics at Stonehill College (Stonehill) filed a complaint with the MCAD charging Stonehill with unlawful discrimination based on his race and color in violation of G. L. c. 151B, § 4 (1). After a public hearing, an MCAD hearing officer determined that Stonehill had discriminated against Soo Tang Tan in violation of G. L. c. 151B, and awarded him back pay, front pay, and $150,000 in damages for emotional distress. The commission affirmed the hearing officer's decision in all respects. Stonehill then filed a complaint in the Superior Court seeking judicial review of the MCAD decision and, should its administrative appeal be unsuccessful, a jury trial de novo on the discrimination complaint. A Superior Court judge denied Soo Tang Tan's motion to dismiss the latter but ordered Stonehill to file an election within thirty days as to its chosen avenue of relief. The judge reasoned that a respondent appealing from an unfavorable MCAD decision is entitled to an administrative appeal or a jury trial de novo, but not both. A single justice of the Appeals Court granted Stonehill leave to pursue an interlocutory appeal of the judge's order, and this court allowed Stonehill's application for direct appellate review.

Wilfert Brothers Realty Co. *vs.* Massachusetts Commission Against Discrimination.

On January 20, 1993, David Keeling filed a complaint with the MCAD alleging that he was unlawfully terminated by Wilfert Brothers Realty Co. (Wilfert Brothers) after incurring a knee injury during the course of his employment. After a public hearing, an MCAD hearing commissioner entered a decision finding Wilfert Brothers liable for handicap discrimination in violation of G. L. c. 151B, § 4. The commission ordered Wilfert Brothers to pay Keeling lost wages and $35,000 in emotional distress damages.[6] Wilfert Brothers filed a petition for review of the MCAD decision by the full commission and, at the same time, served notice to the MCAD and to Keeling of its intention to seek a jury trial. The MCAD decision was affirmed by the full commission.[7] Wilfert Brothers then filed a complaint in the Superior Court, requesting judicial review of the final decision and order of the MCAD or, alternatively, requesting a jury trial on Keeling's claims of discrimination. A judge in the Superior Court denied motions filed by the commission and Keeling to dismiss (or strike) the claim for a jury trial and reported to the Appeals Court the question set forth below.[8] This court allowed Keeling's application for direct appellate review.

Keyland Corporation *vs.* Massachusetts Commission Against Discrimination.

On November 29, 1994, Brenda Raffurty filed a claim with the MCAD asserting that Keyland Corporation and John Kheary (together, Keyland) subjected her to sexual harassment in the

[6]Other relief awarded by the Massachusetts Commission Against Discrimination (MCAD or commission) against Wilfert Brothers Realty Co. were orders to cease and desist handicap discrimination in the workplace and to submit a plan for antidiscrimination training for its employees.

[7]In addition to the relief ordered by the hearing commissioner, the full commission awarded Keeling attorney's fees and costs.

[8]"Did Wilfert Brothers Realty Co. waive its right to a jury trial by not asserting its claim until after the decision of the MCAD hearing officer, but before the Full Commission affirmed that decision, when the decision was issued more than three years after the claim arose?"

workplace in violation of G. L. c. 151B. After a public hearing, an MCAD hearing commissioner entered a decision in favor of Raffurty. Orders entered against Keyland included an order to pay Raffurty $100,000 in emotional distress damages. Keyland filed a petition for review by the full commission and notified the commission and Raffurty of its intention to seek a jury trial. The full commission affirmed the hearing commissioner's decision. Keyland then filed a complaint in the Superior Court seeking both judicial review and a jury trial de novo on Raffurty's discrimination claims. At a hearing on the MCAD's motion that Keyland must elect either judicial review or a jury trial, Keyland assented to the dismissal of its claim for judicial review. Subsequent motions and hearings followed on issues relating to MCAD's standing to participate in the case as a party defendant. In a memorandum of decision and order, the motion judge addressed numerous procedural issues raised in the case and ordered that the trial would be conducted de novo, with the burden on Raffurty to establish discriminatory conduct on the part of Keyland and Kheary. The judge further ruled that the decision of the MCAD would be inadmissible as prima facie evidence of discrimination in the proceedings before the jury and that the MCAD would not be allowed to intervene as a party in the case. The judge then reported the correctness of his decision to the Appeals Court,[9] and we granted Raffurty and the commission's application for direct appellate review.

---

[9]The questions reported are as follows:

"1. Did Kheary and Keyland waive their right to a jury trial by not asserting their claim until after the decision of the MCAD Hearing Officer, but before the Full Commission affirmed that decision, when the decision was issued more than three years after the claim arose?

"2. If Kheary and Keyland did not waive their right to a jury trial, is the trial *de novo*? Specifically:

"a) Does the defendant (the complainant in [the] previous MCAD hearing) have the burden of proof?

"b) Is the MCAD's decision admissible?

"c) Is discovery warranted?

"d) Does the MCAD have a right to intervene?"

Massachusetts Bay Transportation Authority *vs.* Massachusetts Commission Against Discrimination

On May 2, 1994, Geraldine Ross filed a claim with the MCAD alleging discrimination on the part of her employer, the Massachusetts Bay Transportation Authority (MBTA), in violation of G. L. c. 151B, § 4 (16) (handicap).[10] After a public hearing, a MCAD hearing officer entered a decision finding that the MBTA had failed reasonably to accommodate Ross and, moreover, that the MBTA's policy of "denying part-time injured surface line employees the right to ever become full-time employees" arbitrarily discriminated against an entire category of disabled employees. The decision was affirmed by the full commission, and the MBTA was ordered to pay Ross lost wages and emotional distress damages in the amount of $50,000. The MBTA filed a complaint in the Superior Court, seeking judicial review of the commission's decision and asserting its right to a jury trial. A judge in the Superior Court concluded that the MBTA, as a governmental entity, is not entitled to a trial by jury under either art. 15 or the *Lavelle* decision and dismissed that claim. Recognizing that the issue was one of substantial importance, the judge reported the question: "In a proceeding under G. L. c. 151B, does a governmental respondent like the MBTA have a right to trial by jury when the complainant does not elect a judicial determination of her claim?"[11] We granted the MBTA's application for direct appellate review.

1. It will be useful to furnish some legal background. In

---

[10]The original complaint filed with the MCAD alleged that Ross had been denied the opportunity to obtain a full-time position as a fare collector on the basis of her sex (female) and her race and color (African-American). The complaint later was amended, by the MCAD investigating commissioner, to include the claim of handicap discrimination, and Ross withdrew her claims of sex and race discrimination at the time of the public hearing on her claims.

[11]This court noted, in *Lavelle* v. *Massachusetts Comm'n Against Discrimination*, 426 Mass. 332, 337 n.8 (1997), that "[a] governmental respondent's right to a jury trial, if any, has implicitly been waived in G. L. c. 151B, at least where a complainant does not elect a judicial determination of her claim." The intended scope of this comment has been the focal issue of the parties in the above case and the subject of numerous briefs of amici, arguing, on either side, that governmental entities who are respondents in a G. L. c. 151B, § 5, proceeding before the MCAD are, or are not, entitled to have a jury decide the claims against them.

*Dalis*, this court held that art. 15 protects a plaintiff's right to a trial by jury on a claim of employment discrimination based on sex.[12] This principle was extended to claims of handicap discrimination in *Whalen* v. *NYNEX Info. Resources Co.*, 419 Mass. 792, 795 (1995), and to all damage claims under G. L. c. 151B, § 4, in *MacCormack* v. *Boston Edison Co.*, 423 Mass. 652, 655 (1996). The plaintiff in *Dalis* filed suit in the Superior Court, pursuant to G. L. c. 151B, § 9, claiming that her employer had discharged her because she had become pregnant and demanding a jury trial. This court recognized that the plaintiff's sex discrimination claim was a "suit between two persons which clearly set[] forth a controversy concerning property" and, thus, fell "squarely within the language of art. 15." *Id.* at 223. The court determined that the plaintiff's claim was not within art. 15's exception for claims that had been addressed by the court's equity jurisdiction, as it existed in 1780, in either subject matter or the nature of the remedy sought and, instead, analogized the claim "to common law actions sounding in both tort and contract." *Id.*, citing *Gallagher* v. *Wilton Enters., Inc.*, 962 F.2d 120, 122-123 (1st Cir. 1992).

Four years after *Dalis*, a respondent named in a complaint of sex discrimination filed with the MCAD (Lavelle) brought an action in the Superior Court, asserting that, based on the principles stated in *Dalis*, and on principles of equal protection, he likewise was entitled to a jury trial. See *Lavelle, supra* at 333. A judge in the Superior Court dismissed the complaint as premature, on the ground that Lavelle had not exhausted his rights before the commission. On appeal, however, this court considered the merits of Lavelle's claim and concluded that "[t]he reasoning of this court in its *Dalis* opinion identifying the constitutional right of a complainant to have a trial by jury applies equally to a respondent such as Lavelle. If one side to a dispute has a constitutional right to a jury trial, generally the other side must have a similar right." *Id.* at 337.

Having perceived an equal protection infirmity in G. L.

---

[12]The court further held that the plaintiff was entitled to a jury trial on her other allegations of violations of G. L. c. 93, § 102 (equal rights act); G. L. c. 149, §§ 105A-105C (wage discrimination based on gender); and G. L. c. 149, § 105D (maternity leave act). See *Dalis* v. *Buyer Advertising, Inc.*, 418 Mass. 220, 226-228 (1994).

c. 151B, the *Lavelle* court emphasized the importance of deference to the statutory scheme established in G. L. c. 151B, which vests substantial authority in the commission to decide complaints and pointedly does not allow a respondent to avoid a full administrative proceeding by removing a case to the Superior Court. Accordingly, the court fashioned a remedy that expanded the removal rights afforded complainants in § 9 to respondents — albeit postponed until after the full MCAD proceedings had ended — "until the Legislature, if it elects to do so, provides another solution." *Id.* at 338. The court stated:

"A right in a respondent to obtain a jury trial only after the commission has taken final action is the best available option. In this way the commission will be involved in the matter as fully as possible and as the Legislature directed. Many disputes will be settled by the commission and will not need to be adjudicated. Persons representing themselves will not be forced into unfamiliar court surroundings but will be heard instead in less intimidating agency proceedings. Courts, in turn, will not be unnecessarily inundated with gender-based discrimination lawsuits demanded by respondents, perhaps in some instances for tactical reasons. Also, the commission may decide in favor of the respondents on the merits, thereby ending the matter. G. L. c. 151B, § 9, first par. Moreover, although the commission may decide in favor of the complainant, it might only grant traditional equitable relief. In such a case, a respondent would have no right to a jury trial. Additionally, an unsuccessful respondent may conclude that an appeal based on the agency record (G. L. c. 151B, § 6) provides an adequate avenue of relief from the agency decision. We adopt this solution recognizing that it gives certain respondents two chances to prevail, before the commission and then in court, while a complainant unsuccessful before the commission may not proceed to court for a new hearing (G. L. c. 151B, § 9, first par.), but may seek judicial review only on the agency record (G. L. c. 151B, § 6). We also recognize that there will be practical problems in extending a jury trial right to a respondent, including the preparation of a complaint to be filed in court by or on behalf of a complainant. Other questions

may arise concerning the process we have described, but we decline to anticipate and answer them now."[13]

*Id.* at 338-339.

None of the complainants in the four cases under review elected to bring a private action under G. L. c. 151B, § 9. In each case, after a full § 5 proceeding, the commission has determined that the respondent engaged in unlawful discriminatory employment practices. Various remedial orders, including orders for the payment of damages for emotional distress, have been entered against each respondent. The respondents have each filed a complaint in the Superior Court seeking to have the commission's decision overturned or, alternatively, seeking a jury trial de novo. Although each case presents unique issues relative to the respondents' asserted rights to a jury trial,[14] together the cases call into question the validity of *Dalis* and the determination in *Lavelle* that a respondent in a G. L. c. 151B employment case has a right to a jury trial. Before deciding the specific points of law raised in each case, we first consider whether a respondent who, after a full administrative proceeding, has been determined to have violated the provisions of G. L. c. 151B prohibiting discrimination in employment should be entitled to set aside the MCAD decision and orders entered against them and have the same claims decided by a jury in the

[13]The *Lavelle* decision did not decide at what point in the MCAD proceedings a respondent should assert its intention to request a jury trial but suggested the possibility that "to avoid a claim of waiver, [Lavelle] must assert [his right to a jury trial] before the commission holds a hearing on the complaint, perhaps at the same point in the proceedings that G. L. c. 151B, § 9, permits a complainant to elect a judicial, rather than a commission, determination of the complaint." *Lavelle, supra* at 335.

[14]One common issue raised in each case below is whether the respondents, by waiting to request a jury trial until after the public hearing and the entry of the commission's decision in favor of the complainant, have waived their asserted rights to a jury trial. See note 13, *supra.* See also note 23, *infra.* The commission subsequently addressed this issue by regulation, see 804 Code Mass. Regs. § 1.20(5) (1999) (providing that the right to jury trial must be preserved "in writing, and provided to the Commission and the Complainant within 30 days after Certification to Public Hearing"), which did not become effective until January 1, 1999, and so does not apply to the four respondents before us. We note that Stonehill did file a reservation of its right to a jury trial in January, 1999, approximately one year before the MCAD conducted a public hearing on Soo Tang Tan's discrimination complaint.

Superior Court. The position of the respondents on this issue is, essentially, identical: *Dalis* and *Lavelle* were correctly decided, and the principles established therein entitle each respondent to a jury trial de novo on the discrimination claims asserted against them. The position taken by the four complainants and by the MCAD on this issue is that *Dalis* was correctly decided and *Lavelle* is incorrect and must be overruled in part.

2. There is no flaw in the reasoning or conclusion in *Dalis*. Article 15 "preserves 'the common law trial by jury in its indispensable characteristics as established and known at the time the Constitution was adopted' in 1780." *Department of Revenue* v. *Jarvenpaa*, 404 Mass. 177, 185-186 (1989), quoting *Opinion of the Justices*, 237 Mass. 591, 596 (1921). "The common law to which the Justices were referring in their 1921 opinion was not only the common law (judge-made law) of England but also, in general, the English statutes in force at the time of emigration, certain other English statutes and 'ancient usages.' *Commonwealth* v. *Knowlton*, 2 Mass. 530, 534-535 (1807)." *Department of Revenue* v. *Jarvenpaa*, *supra* at 186.

Independent research indicates that, from the late 1700's until midway through the 1800's, common law in both England and the American States provided for an employee's cause of action against an employer for wrongful discharge or breach of employment contract.[15] See Feinman, The Development of the Employment at Will Rule, 20 Am. J. Legal Hist. 118, 118 (1976). In the 1797 Massachusetts case of White *vs.* Currier, 5 Dane's Abr. 110 (1824), for example, an employee who argued "he was prevented by the act of God from fulfilling his [employment] contract" was awarded the sum of twenty-eight

---

[15]As the Supreme Court of Connecticut observed in *Magnan* v. *Anaconda Indus., Inc.*, 193 Conn. 558, 561-562 (1984):

"In the sixteenth century a statute enacted in England prohibited an employer from discharging an employee 'unless it be for some reasonable and sufficient cause of matter . . . .' Statute of Labourers, 5 Eliz. C. 4 (1562), reprinted in 6 Pickering's Statutes 159-60 (1763). Although the statute was eventually repealed, English courts continued to hold that a contract of employment for an indefinite duration was presumptively for a term of one year; see 1 Blackstone, Commentaries 335 (1832); 25 Halsbury's Laws of England 480-81 (3d ed. 1958); and permitted the employee to maintain a cause of action for breach of the employment contract."

dollars as quantum meruit payment from his employer for four months of labor. These causes of action were commonly tried before a jury. See, e.g., *Tufts* v. *Plymouth Gold Mining Co.*, 14 Allen 407, 412 (1867); *Revere* v. *Boston Copper Co.*, 15 Pick. 351 (1834).

Although a violation of G. L. c. 151B is not a tort, we have, on many occasions, identified tort-like aspects of a G. L. c. 151B discrimination claim brought in the Superior Court. See, e.g., *Thomas* v. *EDI Specialists, Inc.*, 437 Mass. 536, 539 (2002); *Conway* v. *Electro Switch Corp.*, 402 Mass. 385, 387 (1988). The Supreme Court of the United States has recognized that "[a]n action to redress racial (or gender) discrimination may . . . be likened to an action for defamation or intentional infliction of mental distress." *Dalis, supra* at 224, quoting *Curtis* v. *Loether*, 415 U.S. 189, 195-196 n.10 (1974). Following the Supreme Court's lead, Federal courts have analogized wrongful discharge and employment discrimination cases to common-law wrongful discharge actions. See *Lebow* v. *American Trans Air, Inc.*, 86 F.3d 661, 668-669 (7th Cir. 1996); *Waldrop* v. *Southern Co. Servs.*, 24 F.3d 152, 156 (11th Cir. 1994); *Pandazides* v. *Virginia Bd. of Educ.*, 13 F.3d 823, 829 (4th Cir. 1994); *Gallagher* v. *Wilton Enters., Inc.*, 962 F.2d 120, 122-123 (1st Cir. 1992); *Smith* v. *Barton*, 914 F.2d 1330, 1337 (9th Cir. 1990), cert. denied, 501 U.S. 1217 (1991).

In addition to the legal nature of the plaintiff's claim in *Dalis*, the remedies sought in the case (compensatory and exemplary damages, interest and costs, and attorney's fees) were predominantly legal rather than equitable in nature. See *Conway* v. *Electro Switch Corp., supra* (recognizing that implicit in language of § 9 allowing "civil action for damages or injunctive relief, or both," was "a plain legislative intent to afford victims of discrimination the legal remedy of compensatory damages"). We note that the right to seek punitive damages granted to complainants, like Dalis, who choose to pursue their claim under G. L. c. 151B, § 9, "traditionally [has] been viewed as a legal remedy that must be imposed by a jury." *Lebow* v. *American Trans Air, Inc., supra* at 669. That G. L. c. 151B, § 9, also allows a plaintiff to seek injunctive relief as

well as damages, "thus mixing a traditionally equitable remedy with a traditionally legal remedy, 'may not compromise [the] constitutional right to a trial by jury.' " *Rosati* v. *Boston Pipe Covering, Inc.*, 434 Mass. 349, 352 (2001), quoting *Dalis*, *supra* at 227 (in context of G. L. c. 149, § 27). Indeed it is hardly controversial that art. 15 guarantees plaintiffs who pursue discrimination claims in the Superior Court the right to have their claims decided by a jury.[16] See *Gallagher* v. *Wilton Enters., Inc.*, *supra* at 124 ("*Conway* [v. *Electro Switch Corp.*, *supra*,] constitutes an authoritative basis for concluding that [actions under G. L. c. 151B, § 9, are] analogous to an [E]ighteenth-[C]entury legal cause of action providing legal remedies"). Indeed, no party in any of the four cases under review asserts otherwise.

3. We now confront the main holding in *Lavelle*. The decision, in most of its aspects, reaffirms *Dalis*, and much of what was said in *Lavelle* with respect to *Dalis* is correct. Based on arguments now made by the parties, and not made in *Lavelle*, however, we conclude that *Lavelle* incorrectly applied the holding in *Dalis* by mistakenly assuming that G. L. c. 151B procedures under § 5 and § 9 are, essentially, the same. Based on that erroneous assumption, the *Lavelle* court reasoned that respondents in a § 5 proceeding are similarly situated, with respect to art. 15, as plaintiffs in a § 9 action in the Superior Court, and so concluded that to deny such respondents the right

---

[16]Arguments presented in the concurring and dissenting opinions suggest that the holding in *Dalis*, *supra* at 223, discussed above, cannot be reconciled with our earlier decision in *Nei* v. *Burley*, 388 Mass. 307, 315 (1983), in which we concluded that claims under G. L. c. 93A are primarily equitable and do *not* give rise to an art. 15 right. In both decisions, this court employed the traditional methodology for determining a constitutional entitlement to a jury trial, namely, by asking whether the claims at issue are analogous to historical common-law causes of action. See *Dalis*, *supra* at 221-225; *Nei* v. *Burley*, *supra* at 313-315. Our decision in *Nei* is not part of this case and, as indicated above, no party in this case submits that *Dalis* was wrongly decided. Analysis of inconsistencies in the court's reasoning in *Dalis* and in *Nei*, therefore, should wait for another day. It should be noted, however, that the decision whether a new statutory cause of action meets the test fashioned to determine the right to a jury trial under art. 15, is not one that can be made with scientific certitude. Rather, the decision directs an inquiry that examines historical antecedents as reasonably viewed in a contemporary setting with attention to the preference, in most instances, for the grant of a jury trial.

to a jury trial would be to deny them equal protection under the law.

Adherence to the principle of stare decisis provides continuity and predictability in the law, but the principle is not absolute. No court is infallible, and this court is not barred from departing from previous pronouncements if the benefits of so doing outweigh the values underlying stare decisis. See *Franklin* v. *Albert*, 381 Mass. 611, 617 (1980); *Lewis* v. *Lewis*, 370 Mass. 619, 628-629 (1976). After reflection, we conclude that the constitutional analysis set forth in *Dalis* does not apply to parties in a § 5 proceeding. The *Lavelle* court's pronouncement to the contrary circumvents the comprehensive scheme set out by the Legislature for the resolution of discrimination claims and (unintentionally) undermines the commission's authority to fulfil its mandate of protecting citizens of the Commonwealth from discriminatory employment decisions and punishing unlawful discrimination in the workplace. See *Knight* v. *Avon Prods., Inc.*, 438 Mass. 413, 424 n.6 (2003); *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 322 (1993); *Lynn Teachers Union, Local 1037* v. *Massachusetts Comm'n Against Discrimination*, 406 Mass. 515, 523 (1990); *Rock* v. *Massachusetts Comm'n Against Discrimination*, 384 Mass. 198, 206 (1981). Accordingly, we conclude that the jury trial holding in *Lavelle* should be overruled.[17] Our reasons are as follows.

(a) The discrimination claim considered in the *Dalis* case had been filed in the Superior Court pursuant to G. L. c. 151B, § 9. There was no suggestion by the *Dalis* court, nor did any party in that case argue, that the art. 15 analysis also would apply to discrimination claims heard in proceedings conducted entirely within the MCAD pursuant to G. L. c. 151B, § 5. The differences between administrative proceedings conducted pursuant to § 5 and a private right of action under § 9 are significant. We highlight but a few.

While the main object of a judicial proceeding under § 9 is

---

[17]We acknowledge that in *Wynn & Wynn, P.C.* v. *Massachusetts Comm'n Against Discrimination*, 431 Mass. 655, 664 (2000), we spoke approvingly regarding *Lavelle*. Based on incorrect assumptions that have been identified above, the relevant portions of *Wynn & Wynn* are no longer to be considered the law.

to recover damages for the individual victim of unlawful discrimination, see *Conway* v. *Electro Switch Corp.*, *supra* at 387, the primary purpose of an administrative proceeding before the MCAD is to vindicate the public's interest in reducing discrimination in the workplace by deterring, and punishing, instances of discrimination by employers against employees. See *Thomas* v. *EDI Specialists, Inc.*, 437 Mass. 536, 541-542 (2002); *College-Town, Div. of Interco, Inc.* v. *Massachusetts Comm'n Against Discrimination*, 400 Mass. 156, 170 (1987). The MCAD was established to enforce the Commonwealth's antidiscrimination laws. The complainant, thus, may be a party to a § 5 proceeding and may present testimony at the public hearing, but it is the MCAD, and not the complainant, that prosecutes the discrimination claim. See G. L. c. 151B, § 5. In direct contrast, the commission typically takes no further action once a complainant elects a judicial determination of a discrimination claim. A plaintiff in an action filed pursuant to § 9 seeks to recover damages to compensate for the injury done him, and to that end, a successful plaintiff may be awarded actual and punitive damages. See G. L. c. 151B, § 9. While a successful complainant in an administrative proceeding may, in appropriate cases, be awarded damages for emotional distress, the commission is empowered to fashion equitable remedies designed chiefly to protect and promote the broader public interest in eradicating systemic discrimination.[18] See, e.g., *Chief Justice for Admin. & Mgt. of the Trial Court* v. *Massachusetts Comm'n Against Discrimination*, 439 Mass. 729, 736-737 (2003). "The primary responsibility to determine the scope of [G. L. c. 151B] has been entrusted to the MCAD, not to the courts." *Rock* v. *Massachusetts Comm'n Against Discrimina-*

---

[18]On a finding that a respondent has engaged in any unlawful practice under G. L. c. 151B, § 4, the commission "shall issue and cause to be served on such respondent an order requiring such respondent to cease and desist from such unlawful practice . . . [and] to take such affirmative action, including but not limited to, hiring, reinstatement or upgrading of employees, with or without back pay, or restoration to membership in any respondent labor organization, as, in the judgment of the commission, will effectuate the purposes of this chapter." G. L. c. 151B, § 5. As of July 1, 2003, the commission also may impose civil administrative penalties, ranging from $10,000 to $50,000, depending on the number of discriminatory practices a respondent was adjudged to have committed in the past. See St. 2003, c. 26, §§ 438, 715.

*tion, supra* at 206. See *Lynn Teachers Union, Local 1037* v. *Massachusetts Comm'n Against Discrimination, supra* at 523.

(b) The respondent in *Lavelle* (and the respondents in the four cases under review) was a party in an MCAD proceeding. The complainant in *Lavelle* (and the complainants in the four cases under review) chose not to proceed through the courts but opted instead for an administrative hearing and judicial review of the commission's decision on her claims. That the Legislature has provided complainants, and not respondents, the right to choose the forum in which their claim will be heard does not pose an equal protection problem.[19] This point was resolved by this court in *New York & Mass. Motor Serv., Inc.* v. *Massachusetts Comm'n Against Discrimination*, 401 Mass. 566 (1988).

In that case, we found no merit in the argument that the procedures outlined in §§ 5 and 9 deprived an employer of its fundamental right to a trial because a complainant may transfer the controversy to the Superior Court for a judicial adjudication of the discrimination claim while an employer may not. See *id.* at 580-581. Our reasoning was premised on the fact that, because, pursuant to § 6, all orders of the commission are subject to judicial review, the respondent in a claim of employment discrimination "is not faced with a denial of access to the judicial system, but rather with a postponement of judicial adjudication at the complainant's option until after the commission has issued a preliminary determination and ordered a remedy based on its findings of fact." *Id.* at 580. We concluded that "[a]ny effect on the rights or privileges of employers as a class is limited to the differences between initial judicial adjudication of a discrimination claim, and a claim that reaches the court after an administrative hearing and determination." *Id.*

(c) Nothing in *Dalis* questioned or altered the equal protection analysis set forth in the *New York & Mass. Motor Serv.*

---

[19]The forum selection issue is by no means the only asymmetrical provision of the statutory scheme. Section 5 directs the MCAD to assist complainants presenting a case (but not to help employers defend) and permits attorney's fees and costs to be awarded to successful complainants only. See *New York & Mass. Motor Serv., Inc.* v. *Massachusetts Comm'n Against Discrimination*, 401 Mass. 566, 580 n.13 (1988) (noting other contexts in which control over access to courts resides in one party).

decision. The *Lavelle* court rested its decision on the fact that since *Dalis*, the statute's "differing treatment of complainants and respondents" in cases where complainants opt to pursue their claims within § 5 proceedings, by default, extinguishes any corresponding right to a jury trial that would have been available to a respondent had the complainant chosen to pursue a private action in the Superior Court. *Lavelle, supra* at 337.

We emphasize that G. L. c. 151B itself does not grant a complainant in an employment discrimination case the right to a jury trial. The statutory scheme merely grants an alleged victim of employment discrimination the threshold opportunity to choose one of "two largely independent avenues for redress of violations of [G. L. c. 151B], one through the MCAD (G. L. c. 151B, §§ 5-6), and the other in the courts (G. L. c. 151B, § 9)." *Brunson* v. *Wall*, 405 Mass. 446, 452 (1989), quoting *Christo* v. *Edward G. Boyle Ins. Agency, Inc.*, 402 Mass. 815, 817 (1988). It is reasonable, and constitutionally permissible, to provide a complainant with a choice of enforcement options. The United States Supreme Court has long recognized:

> "There are many instances in the law where a person entitled to sue may choose between alternative measures of redress and modes of enforcement; and this has been true since before the Constitution. But it never has been held, nor thought so far as we are advised, that to permit such a choice between alternatives otherwise admissible is a violation of due process of law. In the nature of things, the right to choose cannot be accorded to both parties, and, if accorded to either, should rest with the one seeking redress rather than the one from whom redress is sought."

*Panama R.R.* v. *Johnson*, 264 U.S. 375, 392-393 (1924). This is the case even where, as here, one choice would allow the matter to be tried to a jury and one choice would not. See *Paro* v. *Longwood Hosp.*, 373 Mass. 645, 648-652 (1977) (no merit to challenge that screening procedure of medical malpractice tribunal statute, G. L. c. 231, § 60B, violates equal protection or art. 15). Should the complainant choose to remain within the MCAD, then both parties are subject to the formal administrative process, and neither has a right to a jury trial.

See *Doherty* v. *Retirement Bd. of Medford*, 425 Mass. 130, 137 (1997); *Zora* v. *State Ethics Comm'n*, 415 Mass. 640, 652 (1993). Alternatively, if the complainant chooses to bring her claim to the Superior Court, then either party may elect a jury trial under the express terms of Mass. R. Civ. P. 38 (b), 365 Mass. 800 (1974), and under case law applying art. 15.[20] See *Rosati* v. *Boston Pipe Covering, Inc.*, 434 Mass. 349, 351 (2001); *Farnham* v. *Lenox Motor Car Co.*, 229 Mass. 478, 481 (1918). Within either forum, then, both parties have identical art. 15 rights.

One observation is in order with respect to principles of equal protection. Following *Lavelle*, a respondent in a § 5 proceeding may wait until after an unfavorable MCAD decision to elect between judicial review pursuant to § 6 and a de novo jury trial on the merits. A complainant aggrieved with an MCAD decision, on the other hand, plainly has no corresponding strategic advantage. See *Brunson* v. *Wall*, *supra* at 452-453 (concluding that complainant who chose to pursue administrative remedy before MCAD cannot later invoke alternative remedy afforded by § 9). A persuasive argument, thus, could be advanced that *Lavelle*'s purported remedy for G. L. c. 151B's perceived constitutional infirmity violation has created an even more inequitable situation. Moreover, it departs from the Legislature's clear intent that both "parties would be bound by an MCAD decision, subject only to judicial review," *Brunson* v. *Wall*, *supra* at 452, and is at odds with the doctrine of collateral estoppel and "the strong and oft-stated public policy of limiting each litigant to one opportunity to try his case on the merits." *Id.* at 453, quoting *Haran* v. *Board of Registration in Med.*, 398 Mass. 571, 575 (1986). As recognized in *Lavelle*, *supra* at 338, the solution adopted by the *Lavelle* court "gives certain respondents two chances to prevail."

(d) The constitutional analysis in *Dalis* does not support the proposition that art. 15 rights vest whenever an allegation of a

---

[20]Section 9 actually authorizes a complainant alleging injury from a practice unlawful under G. L. c. 151B to "bring a civil action for damages or injunctive relief or both in the superior or probate court." Indisputably, no constitutional right to a jury trial attaches in the Probate and Family Court. See *Edgar* v. *Edgar*, 403 Mass. 616, 618-619 (1988), *S.C.*, 406 Mass. 628 (1990); *Fuller* v. *Sylvia*, 240 Mass. 49, 52-53 (1921).

G. L. c. 151B employment violation is lodged with the MCAD, regardless of the forum in which the claim is to be tried. It is true that the language of art. 15 "sweeps broadly." *Dalis, supra* at 222. Formal proceedings conducted within the MCAD pursuant to § 5, however, are civil administrative proceedings, created by statute and of a type unknown at common law, initiated, directed, and limited by the commission, on behalf of the Commonwealth, against a named respondent. Unlike private actions pursuant to § 9, MCAD proceedings "do not involve a suit between two or more persons in the sense provided for by art. 15, nor do they involve a controversy concerning property as that phrase is used in art. 15." *Zora* v. *State Ethics Comm'n,* 415 Mass. 640, 652-653 (1993) (referring to proceedings to adjudicate civil violations of G. L. c. 268A). See *Doherty* v. *Retirement Bd. of Medford,* 425 Mass. 130, 137 (1997), quoting *Curtis* v. *Loether, supra* at 194 (art. 15 inapplicable to administrative proceedings because jury trials "incompatible with the whole concept of administrative adjudication").

On a finding of employment discrimination, the commission has broad authority to "take such affirmative action, *including but not limited to,* hiring, reinstatement or upgrading of employees, with or without back pay, or restoration to membership in any respondent labor organization, *as, in the judgment of the commission, will effectuate the purposes of this chapter*" (emphasis supplied). G. L. c. 151B, § 5. In *Bournewood Hosp., Inc.* v. *Massachusetts Comm'n Against Discrimination,* 371 Mass. 303 (1976), this court held that implicit in this broad grant of authority, especially where retaliation is shown, is the ability to award damages for emotional distress, which is the natural and probable consequences of such retaliation. See *id.* at 315-316. (In Part 5 of this opinion we reconsider and reaffirm the *Bournewood* holding as well as that of *Buckley Nursing Home, Inc.* v. *Massachusetts Comm'n Against Discrimination,* 20 Mass. App. Ct. 172 [1985], in which the Appeals Court extended *Bournewood* to permit the commission to award damages for emotional distress in cases of employment discrimination not involving retaliation. See *id.* at 182.) We authorized an order for payment of such an award as a logical incident to the "significant delegation of discretion and authority by the

Legislature" to the MCAD to fashion remedial relief and affirmatively to enforce the Commonwealth's antidiscrimination laws. *Bournewood Hosp., Inc.* v. *Massachusetts Comm'n Against Discrimination, supra* at 316. It cannot seriously be doubted that the primary thrust of the relief afforded by the MCAD is equitable in nature and oriented toward vindicating important rights not easily valued in monetary terms.

The authority of the MCAD to order, in appropriate cases, secondary relief in the form of damages to the complainant for emotional distress does nothing to transform a § 5 proceeding into a "controversy concerning property" requiring a jury trial under art. 15. See *Parker* v. *Simpson*, 180 Mass. 334, 353-355 (1902); *Commonwealth* v. *Mongardi*, 26 Mass. App. Ct. 5, 8 (1988). An award of monetary relief does not always implicate, a fortiori, an art. 15 right to a jury trial. See *Opinion of the Justices*, 309 Mass. 571, 601-602 (1941); *Opinion of the Justices*, 309 Mass. 562, 568 (1941). Indeed, the *Lavelle* court expressly recognized that, were equal protection not an issue in the case, authority "would support the disposition of this kind of statutory discrimination claim in an administrative agency, with judicial review based only on the agency record. See *Department of Revenue* v. *Jarvenpaa*, 404 Mass. 177, 188 (1989); *Opinion of the Justices*, 309 Mass. 571, 601-602 (1941); *Opinion of the Justices*, 309 Mass. 562, 568 (1941). Cf. *Doherty* v. *Retirement Bd. of Medford*, [*supra* at 137]; *Pernell* v *Southall Realty*, 416 U.S. 363, 383 (1974) (Seventh Amendment to the United States Constitution); *Kentucky Comm'n on Human Rights* v. *Fraser*, 625 S.W.2d 852, 854 (Ky. 1981) (same); *Plasti-Line, Inc.* v. *Tennessee Human Rights Comm'n*, 746 S.W.2d 691, 693-694 (Tenn. 1988) (same under State Constitution); *Romero* v. *J & J Tire, JMH, Inc.*, 238 Mont. 146, 151 (1989) (no jury trial right in discrimination case heard by administrative agency; Seventh Amendment and State Constitution)." *Lavelle, supra* at 339.[21]

4. The question remains concerning the retroactive applicabil-

---

[21]In reaching our decision, it is not necessary to determine whether we should, for purposes of art. 15 analysis, adopt the "public rights" doctrine, advanced by the United States Supreme Court when considering claims of a right to a trial by jury in matters assigned for resolution to an administrative agency. See *Granfinanciera, S.A.* v. *Nordberg*, 492 U.S. 33, 51-53 (1989);

ity of our acknowledgment that *Lavelle* wrongly applied *Dalis*. Our holding in *Dalis* was retroactive in that it entitled the plaintiff in that case to a jury trial. See *Dalis, supra* at 228. In *MacCormack* v. *Boston Edison Co.,* 423 Mass. 652, 656-658 (1996), this court applied the *Dalis* decision retroactively to all plaintiffs in other cases similarly situated, with damage claims under G. L. c. 151B, § 4, pending in the Superior Court. That decision recognized that "considerations of constitutional principle with rare exceptions require retroactive application. A constitutional decision is not a legislative act but a determination of rights enacted by the Constitution, so that all persons with live claims are entitled to have those claims judged according to what we conclude the Constitution demands." *Id.* at 657, citing *Desist* v. *United States,* 394 U.S. 244, 258-259 (1969) (Harlan, J., dissenting).

It is true that our decision today extends no new constitutional rights and, viewed in terms of its practical import, curtails what, in reliance on *Lavelle,* has been assumed by many to be a respondent's State constitutional right to a trial by jury. We conclude, nevertheless, that it is appropriate that retroactive effect of our decision today be given to all cases that are still open on direct review. Principles of equity and fairness dictate that complainants who have been found by the full commission to have been illegally discriminated against not be forced to relitigate their claims in the Superior Court. We have considered the three factors enumerated in *McIntyre* v. *Associates Fin. Servs. Co. of Mass.,* 367 Mass. 708, 712 (1975), for guidance in deciding when an exception to the general rule of retroactivity might be warranted.[22] There is nothing in the record, or in the briefs submitted by the parties, to persuade us that the *McIntyre*

---

*Atlas Roofing Co.* v. *Occupational Safety & Health Review Comm'n,* 430 U.S. 442, 455 (1977).

[22]The three factors are "(1) whether a new principle has been established whose resolution was not clearly foreshadowed, (2) whether retroactive application will further the rule, and (3) whether inequitable results, or injustice or hardships, will be avoided by a holding of nonretroactivity." *McIntyre* v. *Associates Fin. Servs. Co. of Mass.,* 367 Mass. 708, 712 (1975).

criteria are sufficiently satisfied.[23]

5. Keyland Corporation asks us to overrule *Bournewood Hosp., Inc.* v. *Massachusetts Comm'n Against Discrimination, supra,* and *Buckley Nursing Home, Inc.* v. *Massachusetts Comm'n Against Discrimination, supra,* which hold that damages for emotional distress in employment discrimination cases may be recovered on a finding of discrimination by the commission under G. L. c. 151B, § 5. We conclude that these decisions should not be overruled and express our views on considerations that the commission should apply in making such awards.

(a) The *Bournewood* decision, which allowed recovery of emotional distress damages in employment cases before the MCAD involving retaliation, has been the law for twenty-eight years. The *Buckley* decision, which allowed such damages in other employment cases before the MCAD in a finding of discrimination, has been the law for nineteen years. The *Bournewood* decision points out that the commission's authority under G. L. c. 151B, § 5, as has been quoted above, allows it to fashion remedies that involve "affirmative action, including, *but not limited to,* [certain specified remedies] *as, in the judgment of the commission, will effectuate the purposes of this chapter*" (emphasis supplied). *Bournewood, supra* at 307, 315-316, quoting G. L. c. 151B, § 5, as amended through St. 1969, c. 751, §§ 10-12. The decision emphasizes that the broad power of the commission, as articulated in § 5, and read in conjunction with the mandate in G. L. c. 151B, § 9, liberally to construe the provisions of c. 151B "for the accomplishment of the purposes thereof," namely, the commission's over-all mission, provides a "statutory basis" for the commission to award compensatory damages, which encompassed emotional distress damages in a retaliation case. *Id.* at 316. The *Buckley* decision applied the reasoning in *Bournewood* in extending the commission's right to award emotional distress damages to other employment cases

---

[23]There is no need to address the waiver issue raised in the four cases under review. We note, however, that our decision in the *Lavelle* case issued after the cases had been certified for public hearing and after the complainants' options to institute private actions in the Superior Court had lapsed. For this reason alone, considerations of hardship weigh heavily in favor of the four complainants.

where a finding of discrimination is made. The *Bournewood* and *Buckley* decisions have been consistently applied by this court and the Appeals Court in upholding awards by the commission of emotional distress damages in employment discrimination cases. See *Wynn & Wynn, P.C.* v. *Massachusetts Comm'n Against Discrimination*, 431 Mass. 655, 657 & n.3, 675 (2000) (upholding award of $50,000 for emotional distress damages in sex discrimination case); *College-Town, Div. of Interco, Inc.* v. *Massachusetts Comm'n Against Discrimination*, supra at 169 (upholding award of $10,000 for emotional distress damages in sexual harassment and retaliation case); *Borne* v. *Haverhill Golf & Country Club, Inc.*, 58 Mass. App. Ct. 306, 319-321 (2003) (upholding compensatory damages award in the aggregate of $424,000 for nine plaintiffs, noting that "injury which underlay the compensatory damages was emotional distress"); *Talbert Trading Co.* v. *Massachusetts Comm'n Against Discrimination*, 37 Mass. App. Ct. 56, 57, 64-65 (1994) (upholding award of $10,000 for emotional distress damages in handicap discrimination case); *Franklin Publ. Co.* v. *Massachusetts Comm'n Against Discrimination*, 25 Mass. App. Ct. 974, 975 (1988) (upholding award of $10,000 for emotional distress damages in sex discrimination case). Awards of damages for emotional distress to compensate the victim, when made by the commission under § 5, derive from the commission's statutory mandate to fashion relief to accomplish the statute's broad purpose and, as such, are an incidental but interdependent component of any effective method of eradicating unlawful discrimination. See Restatement (Second) of Torts § 903 comment a (1979) (differentiating between compensatory damages when there has been harm to pecuniary interests of person versus where there has been bodily harm or emotional distress, explaining that, with respect to the latter harms, "the law cannot restore the injured person to his previous position . . . [and such harm is] not in any way analogous to a pecuniary loss, and a sum of money is not the equivalent of peace of mind").

The Legislature obviously has been aware of the *Bournewood* and *Buckley* decisions. Legislative history discloses that several

attempts have been made, unsuccessfully, to modify the impact of these decisions. See, e.g., 2001 House Doc. No. 3042 (proposing in G. L. c. 151B, § 5, to limit awards for emotional distress damages to no more than $50,000); 2001 House Doc. No. 1911 (proposing to require "person claiming to be aggrieved by an alleged unlawful practice or alleged violation of [c.] 151B" to present "expert professional evidence" of emotional distress damages); 1999 House Doc. No. 3969 (proposing to require "person claiming to be aggrieved by an alleged unlawful practice or alleged violation of [c.] 151B" to present "expert professional evidence" of emotional distress damages); 1999 House Doc. No. 2840 (proposing in G. L. c. 151B, § 5, to limit awards for emotional distress damages to no more than $25,000); 1997 House Doc. No. 2262 (proposing to require "person claiming to be aggrieved by an alleged unlawful practice or alleged violation of [c.] 151B" to present "expert professional evidence" of emotional distress damages). In the meantime, the Legislature has strengthened the commission's authority by affirmatively granting the power to award attorney's fees and costs. Compare *Bournewood, supra* at 307-308 (rejecting claim that commission had authority under G. L. c. 151B, § 5, as amended through St. 1969, c. 751, §§ 10-12 [authorizing commission, after finding that employer has violated G. L. c. 151B, § 4, to issue cease and desist order and to "take such affirmative action, including, but not limited to, hiring, reinstatement or upgrading of employees, with or without back pay"] to award attorney's fees, noting that under "American Rule," "attorney's fees are not ordinarily recoverable in the absence of statute, court rule, enforceable contract or stipulation providing therefor"), with St. 1989, c. 722, § 27 (amending second paragraph of G. L. c. 151B, § 5, to add: "In addition to any such relief, the commission shall award reasonable attorney's fees and costs to any prevailing complainant"). See *Fontaine* v. *Ebtec Corp., supra* at 320-321 n.11 (noting St. 1989, c. 722, § 27, "entitles plaintiffs who pursue their cases before the commission to a remedy commensurate with the remedy to which they would be entitled if they filed suit, and

prevailed, in a State or Federal court").[24] The most recent amendment to G. L. c. 151B, § 5, St. 2003, c. 26, § 438, effective July 1, 2003, St. 2003, c. 26, § 715, authorizes the commission to impose civil administrative penalties, ranging from $10,000 to $50,000, on respondents determined by the commission to have engaged in unlawful discrimination.[25] (Prior to this legislation, the MCAD was statutorily authorized to impose civil penalties only in housing discrimination cases. See St. 1989, c. 722, § 29.) It is too soon to assess with any accuracy whether, and how often, civil penalties will be imposed by the MCAD, pursuant to St. 2003, c. 26, § 438, as a means of effectuating the purposes of G. L. c. 151B. We take the addition of this potentially formidable administrative weapon against discriminatory practices further to suggest legislative acceptance of the *Bournewood* and *Buckley* decisions and the commission's

---

[24]We note that, pursuant to an amendment to G. L. c. 151B, § 3, by St. 2003, c. 26, § 437, and effective July 1, 2003, the commission may now retain "reasonable attorney's fees and costs awarded to a prevailing complainant, under [§ 5], when one of its attorneys presents the charge of discrimination before the commission on behalf of the prevailing complainant."

[25]Section 438 of St. 2003, c. 26, provides:

"If, upon all the evidence at any such hearing, the commission shall find that a respondent has engaged in any such unlawful practice, it may, in addition to any other action which it may take under this section, assess a civil penalty against the respondent:

"(a) in an amount not to exceed $10,000 if the respondent has not been adjudged to have committed any prior discriminatory practice;

"(b) in an amount not to exceed $25,000 if the respondent has been adjudged to have committed one other discriminatory practice during the 5-year period ending on the date of the filing of the complaint; and

"(c) in an amount not to exceed $50,000 if the respondent has been adjudged to have committed 2 or more discriminatory practices during the 7-year period ending on the date of the filing of the complaint. Notwithstanding the aforesaid provisions, if the acts constituting the discriminatory practice that is the object of the complaint are committed by the same natural person who has been previously adjudged to have committed acts constituting a discriminatory practice, then the civil penalties set forth in clauses (b) and (c) may be imposed without regard to the period of time within which any subsequent discriminatory practice occurred."

authority to award emotional distress damages as a means of enforcing its broad powers, at least until the Legislature chooses to speak directly on the subject.

We note that in Federal employment discrimination cases under Title VII of the Civil Rights Act, see 42 U.S.C. §§ 2000e-2, 2000e-3, 2000e-5, 2000e-16 (2000), and the Americans with Disabilities Act (ADA), see 42 U.S.C. §§ 12117(a), 12112 (2000), in cases involving intentional discrimination,[26] the Equal Employment Opportunity Commission (EEOC), the Federal agency charged with enforcing those discrimination laws, may seek (on behalf of the "complaining party" or complainant) compensatory damages, including damages for emotional distress. See EEOC Compl. Man. § 60.6 (CCH 2004). If a complainant elects to pursue such a case in Federal court,[27] pursuant to the Civil Rights Act of 1991, which amended both Title VII and the ADA, a prevailing complainant may be awarded compensatory damages, including damages for emotional distress (although those damages are limited in amount depending on the size of the employer). See id. at § 60.5. See also 42 U.S.C. § 1981a(a)(1) & (2), (b) (2000).

With respect to State counterparts, some State discrimination statutes authorize their enforcement agencies to remedy unlawful acts with an award of compensatory damages, including emotional distress damages. The statutory basis for such an award may be expressly stated, see, e.g., Cal. Gov't Code § 12970(a) (Deering Supp. 2004) (authorizing fair employment and housing commission, if it finds an unlawful practice has been committed, to "take action, including, but not limited to . . . damages for emotional injuries . . . [such as] emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses"); La. Rev. Stat. Ann. § 51:2261 (West 2003) (authorizing commission on hu-

[26]Compensatory damages may not be awarded in cases involving disparate impact. See 42 U.S.C. § 1981a(a)(1), (2) (2000).

[27]Although a Title VII complainant cannot initially commence a civil action in Federal court, a complainant retains the right to file such an action *after* filing a charge with the EEOC and regardless whether the EEOC finds "reasonable cause" to support a complainant's charge of discrimination. See 42 U.S.C. § 2000e-5(b), (c), (e) (2000); 29 C.F.R. §§ 1601.19, 1601.28(b) (2003).

man rights, on finding of an unlawful practice, to take "affirmative action," including payment to complainant representing "compensation for humiliation and embarrassment"); Minn. Stat. § 363A.29(4)(a) (Supp. 2003) (authorizing administrative law judge, on finding of unfair discriminatory practice, to award compensatory damages, including "damages for mental anguish or suffering"); R.I. Gen. Laws § 28-5-24 (LexisNexis 2003) (authorizing commission for human rights, on finding intentional discrimination, to award compensatory damages without proof from complainant "that he or she has suffered physical harm or physical manifestation of injury"), or may be a matter of interpretation of a broad remedial provision, see, e.g., N.J. Stat. Ann. § 10:5-17 (West 2002) (authorizing director of division of civil rights, on finding unlawful employment practice, to "take such affirmative action, including, but not limited to, [certain specified action] as, in the judgment of the director, will effectuate the purpose of this act"), as interpreted in *Hernandez* v. *Region Nine Hous. Corp.*, 146 N.J. 645, 653 (1996), and cases cited (explaining that, under N.J. Stat. Ann. § 10:5-17, director has "broad remedial authority to cure unlawful discrimination," including the authority to award compensatory damages and "damages for pain and suffering or personal humiliation"); N.Y. Exec. Law § 297(4)(c) (McKinney 2001) (authorizing commissioner of human rights, after finding unlawful, discriminatory practice, to award "compensatory damages"), as interpreted in *Freudenthal* v. *County of Nassau*, 99 N.Y.2d 285, 291 (2003) (explaining that, under N.Y. Exec. Law § 297[4] [c], commissioner may award compensatory damages that include damages for "mental anguish and other forms of pain and suffering").

(b) Some concern has been expressed on the amount of emotional distress damages that the commission has been awarding in employment discrimination cases and the basis for such awards. We take this occasion to state some views on the subject.

We stress that emotional distress damages should not be improperly considered, or awarded, as a substitute for punitive

damages.[28] Emotional distress damage awards, when made, should be fair and reasonable, and proportionate to the distress suffered. Each award should be case specific and should not be determined by formula or by precise reference points. While evidence in the form of some physical manifestation of the emotional distress, or evidence in the form of expert testimony, is not necessary to obtain an award, such evidence certainly would be beneficial. An award must rest on substantial evidence and its factual basis must be made clear on the record. Some factors that should be considered include (1) the nature and character of the alleged harm; (2) the severity of the harm; (3) the length of time the complainant has suffered and reasonably expects to suffer; and (4) whether the complainant has attempted to mitigate the harm (e.g., by counselling or by taking medication). See Restatement (Second) of Torts § 905 comment i and § 912 (1979). In addition, complainants must show a sufficient causal connection between the respondent's unlawful act and the complainant's emotional distress. See *id.* at § 917. Emotional distress existing from circumstances other than the actions of the respondent, or from a condition existing prior to the unlawful act, is not compensable.

In view of the foregoing principles, we conclude that a finding of discrimination or retaliation, by itself, is no longer sufficient to permit an inference of, or a presumption of, emotional distress. This approach is espoused by the EEOC. See EEOC: Policy Guide on Compensatory and Punitive Damages Under 1991 Civil Rights Act (July 7, 1992), reprinted in Fair Empl. Prac. Man. (BNA) 405:7091-405:7102 (stating that "[e]motional harm will not be presumed simply because the complaining party is a victim of discrimination"). To be compensable, emotional distress must be proved.

Judges acting under G. L. c. 30A in reviewing emotional distress damage awards by the commission should keep the above in mind. Judges, of course, are aware that this aspect (as well as all others) of the commission's decision must be supported by substantial evidence and may not be arbitrary or

---

[28]Pursuant to G. L. c. 151B, § 9, "the court" may award punitive damages to a prevailing petitioner who opted to proceed in the Superior, Probate, or Housing Court instead of before the commission.

capricious. See G. L. c. 30A, § 14 (7). Awards that are not sufficiently supported should be set aside or may be remitted to a sum deemed by the judge to be sufficient compensation in keeping with the evidence before the commission and the applicable burden of proof.

6. In view of what has been said and held above, it is not necessary to answer the questions reported by the judges in three of the cases. In each of the four cases, the respondent's request in the Superior Court for a jury trial is struck. The four cases are to be deemed as cases filed in the Superior Court for review and decision under G. L. c. 30A, on the records prepared before the commission in the G. L. c. 151B, § 5, proceedings. On this basis, the four cases are to stand for further proceedings in the Superior Court.

*So ordered.*

SOSMAN, J. (concurring). I concur in the court's decision to overrule *Lavelle* v. *Massachusetts Comm'n Against Discrimination*, 426 Mass. 332 (1997) (*Lavelle*), and I agree with the court's reasons for doing so. While I also concur in the court's decision not to overrule *Dalis* v. *Buyer Advertising, Inc.*, 418 Mass. 220 (1994) (*Dalis*), I have grave reservations whether that case was correctly decided, and therefore do not join in today's endorsement of the reasoning of *Dalis*. Instead, my concurrence with that portion of today's opinion is based solely on stare decisis.

The tests for analyzing a claim of a right to trial by jury under art. 15 of the Massachusetts Declaration of Rights are well known. Where the suit is "between two or more persons" (as is the case in all employment discrimination suits), or the matter is a "controvers[y] concerning property," art. 15 accords a jury trial "except in cases in which it has heretofore been otherways used and practiced." That exception "incorporates the experience of its drafters, who sought to retain the ordinary forms and administration of the English common law (with which they were most familiar), while allowing future generations to create new forms of actions and proceedings which, for

practical reasons, might not require, or be appropriate for, decision by a jury." *Commonwealth* v. *Mongardi*, 26 Mass. App. Ct. 5, 8 (1988), citing *Parker* v. *Simpson*, 180 Mass. 334, 351-355 (1902). To assess the applicability of the exception in art. 15, we consider whether the present cause of action is "analogous" to some form of claim previously recognized at common law (see *Dalis, supra* at 223), as opposed to being "a wholly new cause of action" (see *Department of Revenue* v. *Jarvenpaa*, 404 Mass. 177, 188 [1989]), and we consider whether the remedies sought are "predominantly legal" as opposed to "equitable" (see *Dalis, supra* at 226). The problem stems from the fact that these tests are not being consistently applied, perhaps due in part to their very imprecision. It is far from clear how closely linked to some common-law claim a modern day claim must be to qualify as "analogous," and as today's decision readily illustrates, the precise same types of damages can be characterized as a "legal" remedy in one case, only to be characterized as "equitable" in another. As a result, the identical test yields inconsistent results, and our art. 15 jurisprudence cannot be harmonized with intellectual honesty.

The *Dalis* court opined that employment discrimination claims are "analogous to common law actions sounding in both tort and contract." *Dalis, supra* at 223. Today's decision, citing to a history of common-law actions for "wrongful discharge or breach of employment contract," similarly concludes that there is an appropriate analogy between an employment discrimination claim under G. L. c. 151B and those common-law contractual causes of action. *Ante* at 559-561. However, G. L. c. 151B sweeps far more broadly than breach of contract actions by discharged employees — it creates a cause of action for persons who had *no* contractual relation with the defendant, premised on the defendant's *refusal* to enter into a contract in the first place (e.g., discriminatory refusal to hire, or refusal to promote). See G. L. c. 151B, § 4 (1) (unlawful for employer "to refuse to hire or employ or to bar or to discharge from employment" on grounds of race, color, religious creed, national origin, sex, sexual orientation, genetic information, or ancestry). See also *Whalen* v. *NYNEX Info. Resources Co.*, 419 Mass. 792, 794-795 (1995) (job applicant not offered job accorded right to

jury trial on handicap discrimination claim under *Dalis*). Neither *Dalis* nor today's decision cites any precedent for the proposition that the common law recognized any cause of action for wrongful refusal to enter into an employment contract.

Claims for retaliation under G. L. c. 151B (which, in light of *Dalis*, also now enjoy a right to trial by jury, see *MacCormack* v. *Boston Edison Co.*, 423 Mass. 652, 655-656 [1996]), are also not predicated on any employment contract between the parties. Indeed, they can be brought by persons who were never employed by the defendant employer, based solely on retaliation for having assisted some other complainant, and they may be brought against defendants who are not employers or even agents of employers. See G. L. c. 151B, § 4 (4A) (unlawful for "any person" to retaliate against any "other person for having aided or encouraged any other person in the exercise or enjoyment" of any right protected by G. L. c. 151B). See also G. L. c. 151B, § 4 (4) (prohibiting retaliation by "any person, employer, labor organization or employment agency" against "any person because he has opposed any practices forbidden under [G. L. c. 151B] or because he has filed a complaint, testified or assisted in any proceeding under [G. L. c. 151B, § 5]"). Retaliation claims can also be predicated on acts occurring after an employment contract has ended. Actions based on conduct occurring after a contract has been terminated do not constitute, nor are they even analogous to, claims for breach of contract. Although there is a preexisting employment contract between a plaintiff and a defendant employer in *some* G. L. c. 151B claims, there is no requirement that such a contract be proved, and there is no such contract in many of the fact patterns that comprise actionable employment discrimination claims under G. L. c. 151B.

Both *Dalis* and today's decision also invoke the notion that claims under G. L. c. 151B have some "tort-like aspects." *Ante* at 560. See *Dalis, supra* at 223. However, as today's decision acknowledges, "a violation of G. L. c. 151B is not a tort." *Ante* at 560. Indeed, subsequent to *Dalis*, this court has shied away from the notion that G. L. c. 151B claims are akin to tort claims. In *Thomas* v. *EDI Specialists, Inc.*, 437 Mass. 536, 538-539 (2002), this court concluded that G. L. c. 151B actions did not

sound in tort, and were not to be treated as tort claims, for purposes of any right to contribution under G. L. c. 231B. This court has also held that wage discrimination claims are not "torts" for purposes of G. L. c. 258, the Massachusetts Tort Claims Act. *Jancey* v. *School Comm. of Everett*, 421 Mass. 482, 500-501 (1995) ("acts of discrimination — whether intentional or unintentional — do not thereby become torts").

*Dalis* cites to one prior case from this court for the proposition that G. L. c. 151B claims are "analogous" to common-law tort actions. *Dalis, supra* at 223, citing *Conway* v. *Electro Switch Corp.*, 402 Mass. 385, 388 (1988).[1] In that case, this court was asked to determine whether a court could award "front pay" to

[1]*Dalis* v. *Buyer Advertising, Inc.*, 418 Mass. 220 (1994), also cites to *Gallagher* v. *Wilton Enters., Inc.*, 962 F.2d 120, 122-123 (1st Cir. 1992), in support of this proposition. That case relies on and cites to various Federal cases that have, in differing contexts, made some comparisons between various statutory causes of action and "tort" claims. First and foremost is *Curtis* v. *Loether*, 415 U.S. 189, 195 (1974), which held that a claim for unlawful discrimination in housing under Title VIII of the Civil Rights Act of 1964 "sounds basically in tort." The Court endorsed the reasoning of the court below, which recognized that the prohibition against racial discrimination in housing "could be viewed as an extension of the common-law duty of innkeepers not to refuse temporary lodging to a traveler without justification," as Title VIII now imposed that same duty on "those who rent apartments on a long-term basis." *Id.* at 195-196 n.10. The Court noted further that a claim of racial discrimination "may also be likened to an action for defamation or intentional infliction of mental distress," both of which were "still developing" under tort law. *Id.* Ironically, however, the Court went on to distinguish Title VIII claims for housing discrimination from Title VII claims for employment discrimination, declining to opine whether there was any right to jury trial for Title VII claims. *Id.* at 196-197. Ultimately, the Court held that there was *not* any right to a jury trial for Title VII claims. See *Lehman* v. *Nakshian*, 453 U.S. 156, 164 (1981); *Great Am. Fed. Sav. & Loan Ass'n* v. *Novotny*, 442 U.S. 366, 375 & n.19 (1979).

In a similar vein, *Gallagher* v. *Wilton Enters., Inc., supra* at 123, cites *Pons* v. *Lorillard*, 549 F.2d 950, 954 (4th Cir. 1977), aff'd, 434 U.S. 575 (1978), which likened an age discrimination claim to "an action in tort." The Supreme Court's affirmance, however, rested instead on statutory grounds, concluding that Congress intentionally conferred a right to jury trial for such claims, again taking pains to *distinguish* such claims from claims brought under Title VII. *Lorillard* v. *Pons*, 434 U.S. 575, 580-585 (1978).

The remaining two cases cited in *Gallagher* v. *Wilton Enters., Inc., supra*, are not discrimination cases. See *Hill* v. *Winn-Dixie Stores, Inc.*, 934 F.2d 1518, 1524 (11th Cir. 1991) (claim by worker who was constructively discharged after missing work for jury duty); *Santiago-Negron* v. *Castro-*

a G. L. c. 151B plaintiff who had proved that her termination was due to sex discrimination. Recognizing that the Legislature had amended G. L. c. 151B, § 9, to allow "a civil action for damages or injunctive relief or both," the court opined that the statute now allowed recovery for "compensatory damages." *Conway* v. *Electro Switch Corp., supra* at 387. Noting that the purpose of such damages was to "make[] the aggrieved party whole," the court saw no reason to conclude that "damages for loss of pay must be limited to the period preceding the date of judgment." *Id.* at 388, quoting *Bournewood Hosp., Inc.* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 303, 315 (1976). In its sole reference to the concept of "tort," the court then observed: "[T]he law of the Commonwealth has traditionally allowed, as an element of tort damages, compensation for the loss of capacity to generate prospective earnings." *Conway* v. *Electro Switch Corp., supra* at 388, citing *Mitchell* v. *Walton Lunch Co.*, 305 Mass. 76 (1940).[2] In other words, the court's reference to "tort damages" was solely to illustrate the fundamental proposition that an award of damages to make someone whole sometimes needs to consider consequences extending into the future, and not just damages that have already been suffered. The court did not observe some conceptual analogy between the elements of a common-law tort claim and a claim for employment discrimination, but merely noted that the recovery in both claims would logically include compensation for loss of future earnings. Unless the court means to say that any form of statutory violation that can cause a form of damage that can also be caused by some type of common-law tort has therefore become "analogous" to a tort action, I fail to see what is so "tort like" about a G. L. c. 151B claim.

The difficulty in applying this test in a consistent fashion is most vividly illustrated by this court's decision in *Nei* v. *Burley*, 388 Mass. 307 (1983) (*Nei*), a case that *Dalis* lamely attempts

---

*Davila*, 865 F.2d 431, 440-441 (1st Cir. 1989) (42 U.S.C. § 1983 claim for politically motivated firing).

[2]The case of *Mitchell* v. *Walton Lunch Co.*, 305 Mass. 76 (1940), involved a claim for personal injuries stemming from a restaurant manager's physical assault on a patron. The damages sought included a diminution in earning capacity as a result of those injuries. *Id.* at 77-78.

to distinguish and that today's decision deliberately avoids. *Ante* at 561 n.16. In *Nei*, this court held that there was no right to a jury trial on claims brought pursuant to G. L. c. 93A. The reasons articulated in *Nei* for concluding that there is no right to a jury trial for G. L. c. 93A claims are equally applicable to G. L. c. 151B claims. *Nei* points to the fact that "although certain consumer violations are perhaps rooted in common law claims, the Legislature left the terms sufficiently open-ended to embrace causes of action for which there are no common law analogues." *Id.* at 313. The same is certainly true of G. L. c. 151B — some discrimination claims are "rooted" in theories of contract (in essence reading the prohibitions of G. L. c. 151B into the parties' employment contract and then allowing suit for "breach" of that contract), but many others arise in situations where there was never any form of contract or agreement between the parties.[3] *Nei* goes on to observe that "any analogies between common law claims for breach of contract, fraud, or deceit and claims under c. 93A are inappropriate because c. 93A dispenses with the need to prove many of the essential elements of those common law claims." *Id.* The same is true of G. L. c. 151B — the elements of an employment discrimination claim do not require proof of the elements of breach of contract, negligence, misrepresentation, assault and battery, defamation, or any other common-law claim. If anything, G. L. c. 93A claims are, in many cases, directly grounded in and entirely duplicative of common-law claims for misrepresentation. Many others are based on a breach of contract, with some egregious circumstance surrounding that breach providing the further ingredient of "unfairness" to make out a G. L. c. 93A claim. While G. L. c. 93A extends beyond mere common-law claims, it nevertheless has a very substantial degree of overlap with the common law, an overlap that is far more extensive than that presented by G. L. c. 151B.

The result in *Nei* is also inconsistent with the notion that such

---

[3]By comparison, in *Rosati v. Boston Pipe Covering, Inc.*, 434 Mass. 349, 351 (2001), we held that G. L. c. 149, § 27, effectively set the "contract price" for employment contracts on public construction projects, thereby making a claim under the statute "fundamentally a contract claim for wages owed under an employment contract." By their nature, all employee claims for an employer's violation of that statute involved a breach of an actual contract.

statutory claims are like torts simply because the statute imposes a "duty," with the civil claim characterized as an action for "breach" of that "duty." If that were all it took to make something "tort like," then surely we would recognize that G. L. c. 93A merely expanded common-law duties to impose a "duty" to refrain from "unfair" or "deceptive" conduct. *Nei* adopts no such reasoning, and it is a reasoning that would make violation of *any* statutory requirement a specie of "tort."

Instead of that analysis, *Nei* observed that G. L. c. 93A "created new substantive rights in which conduct heretofore lawful under common and statutory law is now unlawful." *Nei, supra* at 315. This observation mirrors that made in other cases, namely, that the jury trial right of art. 15 does not extend to wholly new causes of action created by the Legislature. See *Department of Revenue* v. *Jarvenpaa*, 404 Mass. 177, 188 (1989) ("If a wholly new cause of action is created, a jury trial right does not attach to that claim"); *Commonwealth* v. *Guilfoyle*, 402 Mass. 130, 135 (1988) (no right to jury trial in civil rights enforcement action, noting that "[a]t common law, there was no cause of action for violations of civil rights"); *Opinion of the Justices*, 309 Mass. 562, 568 (1941) (proposed legislation granting employees right to sue employers who failed to provide workers' compensation insurance held constitutional, despite lack of provision for jury trial, because legislation "would not provide a new remedy to enforce a common law liability, but rather, in the exercise of the police power, would attach new incidents to the relationship of employer and employee," noting that "[n]o such right in an employee as the right to [workers'] compensation was known to the law at the time the Constitution was adopted"); *Commonwealth* v. *Mongardi*, 26 Mass. App. Ct. 5, 8 (1988) (no right to jury trial on civil motor vehicle infractions, noting that newly decriminalized motor vehicle citation process was "essentially sui generis, and does not express a civil claim, right or remedy which was recognized at common law as requiring a jury trial"). Surely the same is true of claims under G. L. c. 151B: at the time the Constitution was adopted, there was no cause of action for anything remotely resembling employment discrimination — indeed, the most blatantly discriminatory practices were both lawful and widespread. "No

such right in an employee as the right [to be free from discrimination] was known to the law at the time the Constitution was adopted," and G. L. c. 151B has now "attach[ed] new incidents to the relationship of employer and employee." *Opinion of the Justices, supra.* Something that was perfectly lawful at common law has now been declared unlawful, and an entirely new cause of action has been created to redress violations. If there are no jury trials in G. L. c. 93A actions because G. L. c. 93A "created new substantive rights in which conduct heretofore lawful under common and statutory law is now unlawful," *Nei, supra* at 315, then surely the same reasoning should apply to G. L. c. 151B, which, to an even greater degree than G. L. c. 93A, "created new substantive rights in which conduct heretofore lawful under common and statutory law is now unlawful."[4]

Turning to whether the types of relief available in G. L. c. 151B claims are "predominantly legal" as opposed to "equitable," *Dalis, supra* at 226, the picture is again clouded. With the adoption of the Massachusetts Rules of Civil Procedure, we have long since merged "equitable" and "legal" proceedings, see Mass. R. Civ. P. 2, 365 Mass. 733 (1974), and perhaps our grasp of the distinctions between the two has become more shaky than it was in an earlier era when those distinctions were crucial for many purposes. Whatever the reason, we have now come to label identical forms of relief as both "equitable" and "legal," thus making it possible to characterize them either way we wish for purposes of analyzing the right to a jury trial. Today's decision invokes both labels in this inconsistent manner. In explaining its support of the *Dalis* decision, the court today opines that the damages sought in court by G. L. c. 151B plaintiffs are "predominantly legal rather than equitable," *ante* at 560, yet, in denying respondents any right to a jury trial as part of the Massachusetts Commission Against Discrimination's

---

[4]It is, of course, quite possible that it is *Nei*, and not *Dalis*, that was wrongly decided, and that the inability to harmonize the two is not attributable to anything wrong in *Dalis*. However, where our jurisprudence on the subject is sufficiently muddled to have produced these two irreconcilable cases, we should not flatly announce that "[t]here is no flaw in the reasoning or conclusion in *Dalis*," *ante* at 559, while postponing "[a]nalysis of inconsistencies in the court's reasoning in *Dalis* and in *Nei*" to "another day." *Ante* at 561 n.16.

(MCAD's) own proceedings, the court justifies the same damage award rendered in those proceedings as coming within the MCAD's power to "fashion equitable remedies," *ante* at 563. See *ante* at 568 ("primary thrust of the relief afforded by the MCAD is equitable in nature"). But what are the differences between these remedies, and are they stark enough to justify the conclusion that there is a right to jury trial in one form of proceeding but not in the other?

Both proceedings involve some components of relief that are unambiguously recognized as "equitable" — e.g., orders that a MCAD complainant or court plaintiff be reinstated to her former position, or that a perpetrator of sexual harassment be reassigned to keep him apart from the complainant or plaintiff. As to the components of monetary awards, however, the lines become blurred. In *Dalis*, the court considered an award of monetary damages "for economic losses as well as for mental anguish" as the "legal remedy of compensatory damages." *Dalis, supra* at 224, quoting *Conway* v. *Electro Switch Corp.*, 402 Mass. 385, 387 (1988). However, in today's opinion, the court opines that the MCAD's award of emotional distress damages constitutes "remedial relief," "equitable in nature," "deriv-[ing] from the [MCAD's] mandate to fashion relief." *Ante* at 563, 568, 571. If compensating a plaintiff for what she has lost as a result of unlawful employment discrimination (including lost pay and lost peace of mind) is "equitable in nature" when awarded by the MCAD, how do those same losses become the "legal remedy of compensatory damages" when sought by a plaintiff in court? In *Conway* v. *Electro Switch Corp., supra* at 387-388, the court identified "front pay" as part of "the legal remedy of compensatory damages" that a plaintiff could claim under G. L. c. 151B, yet also specified that "front pay" could be awarded by the MCAD. See *Wynn & Wynn, P.C.* v. *Massachusetts Comm'n Against Discrimination*, 431 Mass. 655, 676-677 (2000) (MCAD hearing officer declined to award front pay where evidence on issue of how long complainant would have remained at firm was speculative). Is front pay, a part of the compensation that makes a discrimination victim whole, to be treated as a "legal remedy of compensatory damages," *Conway* v. *Electro Switch Corp., supra*, or is it (when awarded by the MCAD) part of the "equitable" relief that today's decision

identifies as the "primary thrust" of MCAD proceedings? *Ante* at 568.

Given the MCAD's broad authority to fashion remedies for discrimination, see G. L. c. 151B, § 5, the MCAD's power to award monetary relief to a complainant includes all of the "compensatory" (and therefore "legal" remedies) that a plaintiff could obtain in court. See *Bournewood Hosp., Inc.* v. *Massachusetts Comm'n Against Discrimination,* 371 Mass. 303, 315-316 (1976). The *only* component of a monetary award that may be obtained in a court proceeding but that (until recently) could not be ordered by the MCAD is punitive damages. See G. L. c. 151B, § 9, third par.[5] Does that sole difference (that has now itself disappeared) justify labeling damage awards obtained in court proceedings under § 9 as "legal" while labeling monetary awards obtained by way of MCAD orders as "equitable"?[6]

Today's decision overruling *Lavelle* rests on the premise that MCAD proceedings, including the monetary awards granted therein, are predominantly "remedial" and "equitable" (as opposed to "legal") in nature. *Ante* at 560, 567-568. The monetary awards themselves, the court opines, are merely "a logical incident" to the MCAD's equitable powers, just a form of "secondary relief." *Ante* at 567, 568. Cf. *Lavelle, supra* at 337 ("Damages for pain and suffering, emotional distress, and economic loss except perhaps back wages are not traditional forms of equitable relief and may not easily be treated as incidental to equitable relief"). If these damages are "equitable" when awarded by the MCAD, they do not lose their "equitable" flavor when awarded by a court. Thus, the second premise on which *Dalis* rests, namely that the damages awarded

---

[5]Effective July 1, 2003, even that difference was effectively abolished. See St. 2003, c. 26, § 438, amending G. L. c. 151B, § 5 (giving Massachusetts Commission Against Discrimination [MCAD] authority to impose civil penalties in employment discrimination cases).

[6]Comparison to G. L. c. 93A is again instructive. The multiple damage provisions of § 9 and § 11 are punitive in nature, see *Kapp* v. *Arbella Mut. Ins. Co.,* 426 Mass. 683, 686 (1998), quoting *Yeagle* v. *Aetna Cas. & Sur. Co.,* 42 Mass. App. Ct. 650, 655-656 (1997), yet the mere presence of punitive damages in that statutory scheme has not sufficed to confer a right to jury trial in G. L. c. 93A cases. See *Nei* v. *Burley,* 388 Mass. 307, 311-315 (1983).

by courts in G. L. c. 151B cases are "legal" as opposed to "equitable" in nature, is also open to considerable question.

In my view, G. L. c. 151B has created an entirely new cause of action, unheard of at common law, that awards relief predominantly equitable in nature, namely, a combination of injunctive relief and monetary restitution to make the victim whole. As such, administrative proceedings before the MCAD do not violate any party's art. 15 right to a jury trial, and court proceedings instituted by a victim of discrimination do not implicate art. 15 rights either. I am thus inclined to the view that *Dalis* was wrongly decided or, at the very least, that it cannot be reconciled with *Nei*.

I am also of the view that, at least until more recent times, the Legislature had "practical reasons" for believing that this new cause of action would not be "appropriate" for "decision by a jury." *Commonwealth* v. *Mongardi*, 26 Mass. App. Ct. 5, 8 (1988). Laws prohibiting workplace discrimination against racial and ethnic minorities, women, and homosexuals were enacted precisely because prejudices against, or stereotypical assumptions concerning, those persons were so widespread and deeply held. When the Legislature first authorized private suits to redress discrimination in 1974 (see St. 1974, c. 478), the Legislature could reasonably have been of the view that plaintiffs asserting their rights under G. L. c. 151B would face reluctance or even downright hostility from jurors, whereas judges would be better able to uphold and enforce the law as written. (By way of historical reference to illustrate the point, 1974 was the first year of court-ordered busing to desegregate the Boston public schools, a time of terrible racial strife within the city.) That discrimination claims were to be handled either by the MCAD under § 5 or by "the court" under § 9 reflected not only the equitable nature of those newly created claims but also the practical reality of the times, namely, that jurors' sympathies would too often lie with the perpetrators, not with the victims, of discrimination.

It is for these reasons that today's uncritical reaffirmance of the analysis in *Dalis* strikes me as potentially troublesome. In the future, the Legislature may wish to address some other pervasive social problem, and may again want to create a new

cause of action as part of the remedy for that problem, but may also have sound reasons for believing that juries would not be hospitable to such claims or would otherwise not be well suited to decide them. If the reasoning of *Dalis* prevails over that of *Nei*, it would be extremely difficult for the Legislature to create a new cause of action without simultaneously conferring a right to a jury trial, a right that could, in some cases, operate to undermine the very remedy the Legislature wanted to fashion.

However, a decision to overrule a prior case must be based on more than a mere academic disagreement with its analysis. By their nature, cases heard by this court regularly involve difficult issues where there is much to be said for both sides. Whatever result the court reaches thus remains open to justifiable criticism in future years. It is the doctrine of stare decisis that comes to the rescue and allows us to avoid endless revisiting of what were, and will always remain, difficult legal issues. "Stare decisis is a salutary principle, because in most matters a settled rule on which reliance can be placed is of more importance than the precise form of the rule." *Kabatchnick* v. *Hanover-Elm Bldg. Corp.*, 328 Mass. 341, 346-347 (1952). "While perhaps it is more important as to far-reaching juridical principles that the court should be right, in the light of higher civilization, later and more careful examination of authorities, wider and more thorough discussion and more mature reflection upon the policy of the law, than merely in harmony with previous decisions . . . it nevertheless is vital that there be stability in the courts in adhering to decisions made after ample consideration. Parties should not be encouraged to seek re-examination of determined principles and speculate on a fluctuation of the law with every change in the expounders of it." (Citation omitted.) *Mabardy* v. *McHugh*, 202 Mass. 148, 152 (1909).

Thus, in order to overrule a prior case, it is not enough that some or all of the Justices of this court have some intellectual or academic disagreement with the earlier analysis of the issue. There must be something more, above and beyond such a disagreement, that would justify some exception to the doctrine of stare decisis. Here, whatever my concerns as to the soundness of the reasoning in *Dalis*, I see no problem or injustice that results from continued adherence to the holding of that case. While I doubt that there is a constitutional right to jury trials in

G. L. c. 151B cases, juries are now perfectly competent to decide such cases. Trials of employment discrimination claims customarily hinge on assessments of witness credibility and motive, issues that jurors are particularly well equipped to resolve. Adherence to *Dalis* also has the pragmatic benefit of making State law employment discrimination claims under G. L. c. 151B procedurally consistent with Title VII claims under Federal law, which can also be tried to a jury. See 42 U.S.C. § 1981a(c)(1) (2000).[7] There have been no particular problems encountered in having juries decide these claims, and after more than a decade's experience with such jury trials post-*Dalis*, there is no reason to think that any such problems lurk on the horizon.[8] As today's decision points out, none of the parties before us (and none of the amici) has asked us to overrule *Dalis*, which suggests that litigants and practitioners on both sides are content with the status quo. I am disinclined to fix something that is not broken, even if I would have constructed it differently in the first place.

Nor do I see any unfairness in overruling *Lavelle* while continuing to adhere to the holding in *Dalis*. In my view, *Dalis* gives both sides something that they are not actually entitled to, namely, a right to a jury trial on § 9 claims. That both sides have that undeserved benefit under this court's analysis of § 9 does not make it unfair to give them only what they are entitled to in proceedings under § 5. As is customary, it is the claimant who chooses the forum in which to pursue her claim, and the procedures available to both parties in whichever forum is

---

[7]Prior to the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071, the Supreme Court had stated that there was no right to a jury trial in Title VII cases. See *Lehman* v. *Nakshian*, 453 U.S. 156, 165 (1981). The 1991 Act effectively overturned that line of precedent. See Pub. L. 102-166, § 102 (codified in 42 U.S.C. § 1981a[c][1] [2000]). See also *Tyler* v. *Bethlehem Steel Corp.*, 958 F.2d 1176, 1181 (2d Cir.), cert. denied, 506 U.S. 826 (1992).

[8]By comparison, the court's overruling of *Lavelle* in today's decision is well justified. Beyond the errors in its analysis, the *Lavelle* decision has literally wreaked havoc with the conduct of MCAD proceedings, undercut the MCAD's role in enforcing G. L. c. 151B, caused substantial delay in the resolution of discrimination claims, and produced a plethora of difficult substantive and procedural questions as to the interplay between the MCAD proceedings, the MCAD's decision, and a subsequent jury trial. When an erroneous decision has, in the vernacular, "created a monster," as *Lavelle* has done, stare decisis does not stand in the way of our correcting that error.

chosen are abundantly fair to both sides. If this court has incorrectly added yet another procedural option in one forum, that additional option has not created any imbalance or unfairness that I can see.

I am thus satisfied that today's decision properly overrules *Lavelle,* but it is stare decisis, and stare decisis alone, that convinces me to adhere to the holding in *Dalis.*

COWIN, J. (dissenting). Our decision in *Dalis* v. *Buyer Advertising, Inc.,* 418 Mass. 220 (1994) *(Dalis),* stated that, pursuant to art. 15 of the Massachusetts Declaration of Rights, plaintiffs in G. L. c. 151B actions could demand a jury trial. In *Lavelle* v. *Massachusetts Comm'n Against Discrimination,* 426 Mass. 332 (1997) *(Lavelle),* we conferred a reciprocal right on respondents. I am not persuaded by the logic underlying *Dalis,* particularly in view of the fact that antidiscrimination suits were totally unknown at common law. However, I could accept the conclusion in *Dalis* in tandem with the holding in *Lavelle* to prevent a denial of equal protection. But overruling *Lavelle* while preserving *Dalis* creates an unconstitutional asymmetry that empowers plaintiffs unilaterally to extinguish respondents' access to a jury trial merely by choosing under which section of the statute to proceed. Therefore, I respectfully dissent.

The right to a jury trial is fundamental. *Aetna Ins. Co.* v. *Kennedy,* 301 U.S. 389, 393 (1937). *Spence* v. *Reeder,* 382 Mass. 398, 411 (1981). Article 15 preserves that right "[i]n all controversies concerning property, and in all suits between two or more persons," but makes an exception for those types of cases that would have been resolved in equity courts, as opposed to common-law courts, before 1780. See *Parker* v. *Simpson,* 180 Mass. 334, 355 (1902). In *Dalis, supra* at 223, this court concluded that the art. 15 right to a jury trial attaches to sex discrimination claims under G. L. c. 151B, § 9, because those claims are purportedly "analogous to common-law actions sounding in both tort and contract."

However, *Dalis* was inconsistent with our earlier decision in *Nei* v. *Burley,* 388 Mass. 307 (1983), in which we concluded that an action for "unfair or deceptive acts or practices" under

the consumer protection act, G. L. c. 93A, did not give rise to a jury trial right. The *Nei* decision was predicated in part on the fact that G. L. c. 93A, while it often involves actions analogous to common-law tort and contract claims, is not limited by those traditional legal theories and sometimes "embrace[s] causes of action for which there are no common-law analogues." *Id.* at 313. Similarly, G. L. c. 151B encompasses many claims that are not analogous to common-law contract or tort actions.[1] As a practical matter, neither consumer protection nor sex discrimination causes of action would have been familiar to a court in 1780; both may be analogous to traditional claims, but both also exceed the scope of that tradition.[2] The court's references to early cases involving wrongful discharge and breach of employment contract claims prove nothing in this regard. The existence of such cases does not speak to whether employment discrimination was actionable at common law.

Assuming *Dalis* was correctly decided, however, and a jury trial right attaches to § 9 claims, that right must be equally available to plaintiffs and respondents.[3] See *Lavelle, supra* at 338. See also *FUD's, Inc.* v. *State,* 727 A.2d 692, 697 (R.I. 1999). However, *Dalis* left respondents without this right. In a G. L. c. 151B action, it is the plaintiff who decides whether to pursue an administrative remedy under § 5, or to proceed under § 9 in the civil courts, thereby taking advantage of the jury trial right granted in *Dalis.* Under this regime, plaintiffs had the unilateral power, by choosing § 5, to deprive the respondent of a jury trial.

---

[1] For example, G. L. c. 151B, § 4, prohibits employers from refusing to hire members of protected classes, owners of land from refusing to sell or lease to protected classes, and retailers from refusing to extend credit because of a person's age.

[2] The Legislature can authorize a jury trial to one aggrieved by the violation of a statute even where art. 15 does not demand it. *Whalen* v. *Nynex Info. Resources Co.,* 419 Mass. 792, 794 (1995); *Nei* v. *Burley,* 388 Mass. 307, 312 (1983). However, aside from explicitly authorizing jury trials for claims of age discrimination in employment in G. L. c. 151B, § 9, the Legislature did not exercise this power with regard to other parts of the statute. See *Nei* v. *Burley, supra* at 314 (refusing "to imply a right to a jury trial" under G. L. c. 93A in absence of explicit legislative recognition of such right).

[3] For the sake of clarity, I use the term "plaintiffs" to refer both to "complainants" proceeding under G. L. c. 151B, § 5, and to aggrieved persons seeking a civil remedy in court under G. L. c. 151B, § 9.

*Lavelle, supra* at 338, remedied this inequity by concluding that when a plaintiff elects to proceed under G. L. c. 151B, § 5, the respondent must be entitled to demand a jury trial at some point in the proceeding.[4] This conclusion was based on two overarching concepts. First, pursuant to the reasoning in *Dalis*, we concluded that, because the Massachusetts Commission Against Discrimination (MCAD), in a § 5 proceeding, may award damages that go beyond traditional areas of equity, such as pain and suffering, emotional distress, and economic loss, the "sacred" and fundamental art. 15 right to a jury trial was necessarily invoked. *Id.* at 337. Second, because *Dalis* concluded that art. 15 granted the right to a jury trial to plaintiffs, equal protection demanded that "[i]f one side to a dispute has a constitutional right to a jury trial . . . the other side must have a similar right." *Id.* If the first proposition was a proper statement of constitutional law, the second was necessary to avoid a different constitutional violation. A fundamental right, even if erroneously available, must be available to both parties.

The court characterizes the advantage it confers on plaintiffs as a product of a mere choice of forum or avenue for redress, citing *Panama R.R.* v. *Johnson,* 264 U.S. 375, 392-393 (1924); *New York & Mass. Motor Serv., Inc.* v. *Massachusetts Comm'n Against Discrimination,* 401 Mass. 566, 550-581 (1988); and *Paro* v. *Longwood Hosp.,* 373 Mass. 645, 648-652 (1977). *Ante* at 564-566. None of these cases allowed one side of a legal dispute unilaterally to deprive the opponent of a fundamental right. In *New York & Mass. Motor Serv., Inc.* v. *Massachusetts Comm'n Against Discrimination, supra* at 579-580, the respondent claimed that the statutory scheme of G. L. c. 151B violated equal protection because it allowed plaintiffs, by electing an administrative remedy under § 5, to force respondents

---

[4]The court notes that *Lavelle* itself recognized that certain respondents might secure "two chances to prevail," one before the MCAD and again before a jury. *Lavelle* v. *Massachusetts Comm'n Against Discrimination,* 426 Mass. 332, 338 (1997). The *Lavelle* court reasoned that this potential inequity (one that did not implicate constitutional concerns) was a temporary expedient to prevent an immediate constitutional violation, until such time as the Legislature acted to provide another solution. *Id.* at 338-339. That immediate constitutional violation, it bears repeating, was securing for the plaintiff both the fundamental right to a jury trial, and the ability unilaterally to deprive the respondent of that same right.

into a proceeding that did not adhere to the strict rules of evidence, required proof by "substantial evidence" instead of a "fair preponderance," and permitted respondents only judicial review under the standard of G. L. c. 30A. In that case, we found no merit to the respondent's claim, but we went out of our way to point out that we were not addressing a fundamental right. *Id.* at 580-581. See *Lavelle, supra* at 336. Similarly, the *Johnson* Court, *supra* at 392-393, addressed the right of injured seamen to elect alternative measures of redress, but not the substance of the "measure of redress or either form of action." In *Paro* v. *Longwood Hosp., supra* at 648-651, the plaintiffs challenged a statute which required medical malpractice claimants who cannot convince a tribunal that their claims "raise a legitimate question of liability," G. L. c. 231, § 60B, to post a bond before pursuing their claims in the courts. Once again, we explicitly stated that "[n]o claim is made in this case that a fundamental interest . . . is involved . . . ." *Id.* 650. Unlike those cases, here we are dealing with one party's ability to deprive another party of a constitutionally guaranteed, fundamental right.

The court also goes to great lengths to distinguish § 9 "private actions" from § 5 "civil administrative proceedings," the "primary purpose of [which] is to vindicate the public's interest." *Ante* at 563, 567. This distinction is artificial. Nowhere in G. L. c. 151B, or in our prior cases, is it established that the vindication of the public's interest in prosecuting discrimination claims in general is the "primary purpose" to be promoted over the vindication of the private interests of those adversely affected by that discrimination. The cases cited by the court for this proposition, *Thomas* v. *EDI Specialists, Inc.*, 437 Mass. 536, 541-542 (2002), and *College Town, Div. of Interco, Inc.* v. *Massachusetts Comm'n Against Discrimination*, 400 Mass. 156, 170 (1987), state only that the MCAD has broad authority to remedy and reduce discrimination in the workplace. *Ante* at 563.

Irrespective of debates over the abstract purpose of antidiscrimination laws, in reality, proceedings under G. L. c. 151B, § 5, are just as much cases between two parties as are civil actions proceeding under G. L. c. 151B, § 9. The court cites *Zora* v. *State Ethics Comm'n*, 415 Mass. 640, 652-653 (1993),

for the proposition that administrative proceedings before the MCAD "do not involve a suit between two or more persons." *Ante* at 567. But *Zora* addressed G. L. c. 268A, a statutory scheme that authorizes actions only by the State Ethics Commission, and makes no provision for private actions. By contrast, when a plaintiff elects to proceed under G. L. c. 151B, § 5, the matter is for all intents and purposes a private suit in which a private plaintiff seeks private remedies. The MCAD does not initiate the suit; it merely puts its resources behind the plaintiff's claims in those cases where it finds that there is "probable cause" to credit those claims. The plaintiff advances the identical substantive claims under § 5 as he or she would under § 9; the plaintiff is able to request the same remedies as under § 9 (with the exception of punitive damages); and prevailing plaintiffs are often (in fact, almost always, according to the MCAD's supplemental brief) awarded remedies that exceed the scope of equitable relief. Further, the plaintiff retains control over important aspects of the case. If the MCAD wishes to settle but the plaintiff does not, the plaintiff is entitled to remove the case to the civil courts. 804 Code Mass. Regs. § 1.18(4) (1998). The plaintiff also may unilaterally remove the complaint from the commission after ninety days, regardless of the public's interest in the case. G. L. c. 151B, § 9.

Despite these indicia of a private action at law, the court insists on labeling proceedings under § 5 as somehow more administrative and equitable in nature than private actions. But this denomination is belied by the court's simultaneous concern about the amount of emotional distress damages routinely awarded by the commission to plaintiffs. *Ante* at 575. The court's attempt to rein in those amounts by suggesting guiding principles and factors is tellingly reminiscent of the type of instructions that would be given to a jury at a trial. But even assuming arguendo that, in cases proceeding under § 5, the MCAD is not participating in a private action but primarily acting to vindicate public rights, there is still no permissible basis for granting the right to a jury trial only to one side of a dispute simply by declaring that the process is "administrative," at least while the proceeding may result in an order that compels a respondent to pay, sometimes substantially, for the plaintiff's alleged losses.

Today the court, in the name of vindicating the State's antidiscrimination policy, visits discrimination on an entire class of citizens, those who find themselves respondents at the MCAD. If we are to have *Dalis*, simple fairness dictates that we have *Lavelle*. Our continued tinkering with this statute is, respectfully, making bad matters worse, and therefore I dissent.